IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| COMMISSION ON HEALTH CARE CERTIFICATION, INC. d/b/a INTERNATIONAL COMMISSION ON HEALTH CARE CERTIFICATION, | : : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civ. A. No.: 1:23-cv-316 |
| FIG EDUCATION, INC., and SHELENE J. GILES, | : : : | *Jury Trial Demanded* |
| Defendants. | : : : : : : | |

## <u>COMPLAINT</u>

Plaintiff Commission on Health Care Certification, Inc. d/b/a International Commission on Health Care Certification, by and through its undersigned attorney, hereby file this complaint against Defendants FIG Education, Inc. and Shelene J. Giles, (referred to herein collectively as "Defendants"), and allege as follows:

## PARTIES

1.      Plaintiff Commission on Health Care Certification, Inc. d/b/a International Commission on Health Care Certification (hereinafter "Plaintiff" or "ICHCC") is a

corporation organized and existing under the laws of the Commonwealth of Virginia and has a principal place of business at 13801 Village Mill Drive, Suite 103, Midlothian, Virginia 23114.

2.     Defendant FIG Education, Inc., formerly FIG Services, Inc., is a corporation organized and existing under the laws of the State of North Carolina (referred to hereinafter as "FIG").  FIG's principal office is located at 86 Ponderosa Drive, Canton, North Carolina 28716.  FIG's registered agent is Shelene J. Giles.  FIG's registered agent office street and mailing address is 86 Ponderosa Drive, Canton, North Carolina 28716.

3.     Defendant Shelene J. Giles (hereinafter "Giles") is an individual resident of North Carolina.  Upon information and belief, Giles resides at 86 Ponderosa Drive, Canton, North Carolina 28716.  Giles is President of FIG.

## JURISDICTION AND VENUE

4.     This action includes claims for trademark infringement, unfair competition and false advertising arising under the United States Lanham Act, 15 U.S.C. § 1125. Accordingly, this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a).  In addition, this Court has subject matter jurisdiction over Plaintiff's claims for unfair competition, pursuant to 28 U.S.C. § 1338(b).  Furthermore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's claims based on state law, because they are so related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States

Constitution. Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Defendant FIG. FIG is a North Carolina corporation, with a principal place of business located within the State of North Carolina.

6. This Court has personal jurisdiction over Defendant Giles. Giles is a resident of the State of North Carolina, and Giles is president of a North Carolina corporation doing business within the State of North Carolina.

7. This Court is a proper venue for the action pursuant to 28 U.S.C. §1391(b)(1), because Defendant FIG and Defendant Giles reside within this judicial district. Defendant FIG is a North Carolina corporation having a principal office within this judicial district at 86 Ponderosa Drive, Canton, North Carolina 28716. Defendant Giles is an individual residing within this judicial district at 86 Ponderosa Drive, Canton, North Carolina 28716. In addition, this Court is a proper venue for this action pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Defendants have committed acts of trademark infringement, unfair competition, and false advertising at FIG's principal place of business of 86 Ponderosa Drive, Canton, North Carolina 28716, which is located within this judicial district.

## STATEMENT OF FACTS

8. Plaintiff is a certifying organization providing internationally recognized certifications to professionals in life care planning and related fields. Plaintiff is the oldest

international certifying agency in the field of life care planning service delivery in the United States and Canada. Plaintiff promulgates practice standards and guidelines that must be met for its various certifications in life care planning and related fields. Professionals seeking a certification must meet Plaintiff's academic and professional standards, complete specific training, and pass an examination prepared by Plaintiff. Plaintiff has developed various certification credentials in response to the rapid growth and influence of case management in catastrophic disabilities and managed care in today's health care industry. Plaintiff's certifications signify to the public that a professional has met Plaintiff's standards of knowledge, skill and competency in life care planning and related fields. Plaintiff has conducted extensive research in support of the development of its certification programs relating to the delivery of life care planning services and related catastrophic case management. Information regarding Plaintiff and its certifications can be found at Plaintiff's internet website https://www.ichcc.org/.

9.     Many professionals attaining certification by Plaintiff serve as expert witnesses in personal injury litigation. They prepare expert reports and provide expert testimony relating to the medical care the injured person will need over the course of the person's life and the expected costs. Comprehensive training programs relating to life care planning have evolved to respond to a need for life care planning services as applied to catastrophic injury cases. Healthcare professionals, such as vocational/medical rehabilitation case managers and rehabilitation nurses, have established themselves as consultants and case managers in such catastrophic cases and often detail the medical and rehabilitation needs of catastrophically disabled and injured persons. Plaintiff has

4

developed certifications in response to the rapid growth and influence of case management in catastrophic disabilities and managed care in today's health care industry.

10.    Plaintiff is dedicated to the development and administration of well-researched, standardized tests designed to measure an applicant's working knowledge and skills of the respective health care service delivery system to which they apply for certification.

11.    Plaintiff is the owner of numerous common law trademarks for its certifications, known as certification marks, which include "CERTIFIED LIFE CARE PLANNER" and its initialism "CLCP", and "MEDICARE SET-ASIDE CERTIFIED CONSULTANT" and its initialism "MSCC" (referred to collectively as "Plaintiff's Marks").

12.    Plaintiff's CERTIFIED LIFE CARE PLANNER™ mark and CLCP™ mark have been continuously used in interstate commerce throughout the United States in connection with the certification of professionals providing life care planning services since at least as early as 1996.  The CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks, as used by persons authorized by Plaintiff, certifies that the individuals have passed an examination and met all of Plaintiff's certification criteria for providing life care planning services, which include assessment of a client's long-term medical and independent living service needs and assessment of a client's vocational potential and capabilities. Plaintiff's certification criteria include specific academic requirements, professional experience, training, and successful passage of a required examination. Applicants satisfying Plaintiff's standards for certification as a CERTIFIED LIFE CARE

PLANNER™ can use the CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks to signify to the public that they have met Plaintiff's standards for certification. Attached as Exhibit 1 to this complaint is a webpage from Plaintiff's internet website (https://www.ichcc.org/certified-life-care-planner-clcp.html), which provides current information regarding Plaintiff's CERTIFIED LIFE CARE PLANNER™ / CLCP™ certification.

13.     Plaintiff Commission on Health Care Certification, Inc. was founded in 2002 by its President, V. Robert May III, Rh.D. ("Dr. May"). Dr. May holds a doctorate in rehabilitation from Southern Illinois University-Carbondale. He was an adjunct professor in the Department of Rehabilitation Counseling at Virginia Commonwealth University from 1986 to 1988. Dr. May awarded dissertation grants to the Department of Rehabilitation, Rehabilitation Institute at Southern Illinois University where he oversaw validation research studies of functional capacity evaluation protocols. Dr. May has authored over sixty peer-reviewed journal articles and book chapters on industrial rehabilitation and legislation governing occupational medicine practices. He co-authored a textbook titled "NADEP Guide to Functional Capacity Evaluation with Impairment Rating Applications" which was published in 1999.

14.     In 1994, Dr. May founded the Commission on Disability Examiner Certification, Inc., the predecessor in interest to Plaintiff Commission on Health Care Certification, Inc. The Commission on Disability Examiner Certification, Inc. ("CDEC") was incorporated by the Commonwealth of Virginia State Corporation Commission on April 28, 1994.

15.     Dr. May, while President of the CDEC, began work in 1995 on the development of the CERTIFIED LIFE CARE PLANNER™ (CLCP™) certification program.  Attached as Exhibit 2 to this complaint is a copy of the CDEC Spring 1995 Standards and Examination Guidelines, which describes the CERTIFIED LIFE CARE PLANNER™ (CLCP™) program and sets forth the requirements for CERTIFIED LIFE CARE PLANNER™ (CLCP™) certification.  In March 1996, the CDEC began administering tests for CERTIFIED LIFE CARE PLANNER™ / CLCP™ certification, and the first CERTIFIED LIFE CARE PLANNER™ / CLCP™ certificates were issued to applicants successfully meeting the certification standards by July 1996.

16.     Attached as Exhibit 3 to this complaint is a document having a fax date stamp of March 31, 1999 originating from University of Florida's INTELICUS venture describing and promoting CDEC's CERTIFIED LIFE CARE PLANNER™ / CLCP™ certification.  The March 31, 1999 fax includes biographies of faculty members some of whom have and display the CLCP™ certification.

17.     In 2002, Dr. May formed the Commission on Health Care Certification, Inc. (Plaintiff), which is the successor in interest to CDEC.  Plaintiff continued the use of the CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks that began at the CDEC as early as 1996, and use of the marks continues to the present day.

18.     Over the last twenty-seven years, the CERTIFIED LIFE CARE PLANNER™ / CLCP™ certification has been awarded to more than 1,700 professionals meeting its rigorous requirements.  These professionals include vocational rehabilitation evaluators/counselors, medical physicians, nurses, occupational therapists, physical

therapists, speech therapists, social work professionals, psychologists, physician assistants, and chiropractic physicians. Upon information and belief, Plaintiff has awarded its CERTIFIED LIFE CARE PLANNER™ / CLCP™ certification to individuals from every state in the nation except North Dakota.

19.     Plaintiff's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks are distinctive and have achieved secondary meaning. Plaintiff's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks are recognized by professionals within the life care planning community and the legal community that utilizes life care planners as a reliable indicator that an individual is well-trained and qualified to deliver life care planning services. Life care planning professionals throughout the United States recognize the CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks as being associated with Plaintiff and as an indication that an individual has met Plaintiff's stringent certification standards for life care planning.

20.     Plaintiff is the owner of pending U.S. Application Serial No. 98082134 filed July 12, 2023 in the U.S. Patent and Trademark Office for federal registration of **CLCP** as a certification mark.

21.     In 2004, Plaintiff expanded upon its certification offerings and developed the MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ / MSCC™ credential, which established a process for testing and certifying professionals who work within the workers' compensation benefit system and legal system as a health care professional, legal representative, or insurance claims adjuster, and have expertise in Medicare set-aside trust arrangements. Plaintiff's MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ /

MSCC<sup>TM</sup> certification serves as an indicator that individuals who have been certified with the credential have demonstrated a breadth of knowledge regarding the development and application of the Medicare set-aside trust arrangement process.

22.     Plaintiff has continuously used its MEDICARE SET-ASIDE CERTIFIED CONSULTANT<sup>TM</sup> and MSCC<sup>TM</sup> marks in commerce throughout the United States since at least as early as 2004.   Plaintiff's MEDICARE SET-ASIDE CERTIFIED CONSULTANT<sup>TM</sup> and MSCC<sup>TM</sup> marks are distinctive and have achieved secondary meaning.   Plaintiff's MEDICARE SET-ASIDE CERTIFIED CONSULTANT<sup>TM</sup> and MSCC<sup>TM</sup> marks are recognized by professionals providing consulting services relating to Medicare set-aside arrangements and the legal community utilizing said professionals as being associated with Plaintiff and as an indication that an individual has met Plaintiff's rigorous certification standards with regard to providing consulting services relating to Medicare set-aside arrangements.

23.     Plaintiff is the owner of pending U.S. Application Serial No. 98050105 filed June 20, 2023 in the U.S. Patent and Trademark Office for federal registration of **MSCC** as a certification mark.

24.     Plaintiff has continuously used its MEDICARE SET-ASIDE CERTIFIED CONSULTANT<sup>TM</sup> and MSCC<sup>TM</sup> marks in commerce throughout the United States since at least as early as 2004.

25.     Plaintiff's certifications generally require candidates to meet certain academic and professional standards, complete specific course work or training, and pass an examination given by Plaintiff.  Plaintiff does not teach courses or provide training to

candidates for its certifications. It is generally discouraged for a certifying organization to provide the training to candidates seeking certification from the organization as it can lead to conflicts of interest that can diminish the credibility, integrity and impartiality of the training thereby eroding the credibility of the certification. When a certifying organization that develops and gives an examination to candidates also provides course training for candidates preparing for that examination there is a potential for undesirable outcomes. For example, the organization could easily feed the candidates all of the answers to the examination to ensure that all candidates passed the examination to maximize revenue for the organization. As such, it is preferable for an outside agency that is independent of the certifying organization to provide the course training. Plaintiff approves courses and training programs provided by independent organizations which the candidates can take to satisfy the educational/training requirements for Plaintiff's certifications. Such courses and training programs must meet specific standards developed by Plaintiff in order to be approved by Plaintiff. Adherence to these standards for approved training programs is important for maintaining the credibility, integrity and impartiality of Plaintiff's certifications.

26. Candidates for Plaintiff's CERTIFIED LIFE CARE PLANNER™ (CLCP™) certification must complete an ICHCC pre-approved 120-hour post-graduate training program.

27. Upon information and belief, Defendant Giles is the founder, president and CEO of Defendant FIG Education, Inc. ("FIG"). Giles formed FIG in 2005. FIG purports to provide a wide variety of services relating to life care planning. According to its website

www.figeducation.com, FIG offers certifications for professionals in life care planning and related fields of medical cost projection and Medicare Set-Aside arrangements, and also offers the required classes for the individuals applying for FIG's certifications, continuing education for those individuals after they have attained certification from FIG, and one-on-one coaching sessions to certified individuals.  In addition, FIG itself provides life care planning services.  According to its website www.figeducation.com, FIG's "services are provided as a consultant or an expert witness with referrals from attorneys, insurance carriers, employers, healthcare providers, individuals, and families.  The services provided by FIG Services include Records Review, Medical Cost Projection, Life Care Plan, Life Care Plan Review, Medicare Set-Aside, Day in the Life Video, Settlement Video, and Catastrophic Case Management."  A copy of the webpage www.figeducation.com accessed September 26, 2023 is attached as Exhibit 4 to this complaint.

28.    In 2011, Plaintiff approved FIG as a provider of courses satisfying the 120 hours of post-graduate/post-specialty degree training required candidate's seeking Plaintiff's CERTIFIED LIFE CARE PLANNER™ (CLCP™) certification.  At the time FIG's courses were approved by Plaintiff, FIG did not offer any of its own certifications.

29.    In 2021, Plaintiff became aware of significant problems relating to FIG's CLCP™ training program.  For example, Plaintiff discovered that FIG was allowing its students to print certificates of completion of FIG's training program **before** the students had actually completed the program.  Also, FIG's peer-review techniques failed to provide its students with in-depth substantive feedback on the sample life care plans they submitted for grading.  Often, FIG awarded students an unearned perfect score on sub-standard life

care plans with little critique beyond an undeserved, "Well done!" One such plan critiqued as "well done," contained numerous misspellings and appeared to be plagiarized as it contained another student's name and résumé as the author.

30.     On May 18, 2021, Plaintiff informed FIG in writing regarding the deficiencies with regard to FIG's CLCP™ training program, and suspended FIG as an authorized training program for Plaintiff's CLCP™ certification. Plaintiff also provided FIG guidance for correcting the deficiencies and informed FIG that if it did not make the necessary corrective changes by September 1, 2021, its approval to provide training programs for Plaintiff's CLCP™ certification would be terminated.

31.     Despite attempts by Plaintiff to work with FIG to bring FIG's training program into compliance with Plaintiff's standards, FIG failed to make the necessary changes to bring its training program into compliance with Plaintiff's standards. Accordingly, Plaintiff's approval of FIG's training program for the CLCP™ certification was terminated as of September 1, 2021.

32.     After FIG was no longer approved to provide training for Plaintiff's certifications, Plaintiff continued to receive applications for certification from individuals who had completed FIG's non-approved training program. Some individuals who had completed FIG's non-approved training program were surprised to learn that they were not eligible to sit for the examination for Plaintiff's certification.

33.     Upon information and belief, FIG continued to advise its students and prospective students that FIG's training program was approved by Plaintiff to satisfy the

training course requirement for Plaintiff's CLCP<sup>TM</sup> certification after said approval had been terminated.

34.    Upon information and belief, FIG accepted payment from students for training programs that the students believed to be approved by Plaintiff to satisfy the training course requirement for Plaintiff's certification, but in fact were not approved by Plaintiff.

35.    On or about November 6, 2021, FIG announced that it would begin offering its own certification relating to life care planning known as "LIFE CARE PLANNING – CERTIFIED", with the initialism "LCP-C".

36.    FIG introduced its new LIFE CARE PLANNING–CERTIFIED / LCP-C credential in a deliberately confusing and deceptive manner.  FIG's website stated: "FIG's Life Care Planning – Certified (LCP-C) credential was designed for the medical, healthcare, and rehabilitation provider wishing to gain the competency learning and comprehensive knowledge which is necessary to practice as a QUALIFIED Life Care Planner."  *See* Exhibit 5, webpage https://www.figeducation.com/certification/ accessed January 7, 2022 (emphasis in original).  This statement by FIG gave the false impression that FIG's LIFE CARE PLANNING–CERTIFIED / LCP-C certification was "necessary to practice as a QUALIFIED Life Care Planner."  In an effort to specifically target life care planning professionals, Giles subsequently published this same confusing and misleading statement to an online LinkedIn account that she maintains.  Moreover, on or about November 8, 2021, the same misleading statement was published on a computer listerserv maintained by the International Academy of Life Care Planners ("IALCP") and in an e-

mail blast to a number of members of the IALCP, entitled "A new LCP Certification." IALCP has more than 500 members and is the life care planning section of the International Association of Rehabilitation Professionals ("IARP"). The IARP is a professional association to which many CLCP™ certified professionals belong.

37. FIG's new LIFE CARE PLANNING–CERTIFIED / LCP-C "credential" is specifically designed to confuse the public with Plaintiff's longstanding CERTIFIED LIFE CARE PLANNER™ / CLCP™ credential, which was established over twenty-six years ago as reliable certification for professionals in the life care planning field.

38. In designing its new LCP-C "credential," FIG simply moved the "C" from the beginning of Plaintiff's CLCP™ mark to the end and inserted a hyphen between "P" and "C."

39. FIG's new LIFE CARE PLANNING–CERTIFIED / LCP-C "certification" is nothing more than a money-making scheme, developed to free ride on the coattails of decades of hard work, research, and investment by Plaintiff to develop and refine its CLCP™ certification. Over the course of a quarter century, Plaintiff's CLCP™ certification has been widely respected by professionals within the life care planning community.

40. Indeed, this is demonstrated by FIG's willingness to award its LCP-C certification to anyone already having Plaintiff's CLCP™ certification with the payment of a $99-certification fee and the submission of a "redacted Life Care Plan" that FIG deems passable. *See* Exhibit 6, https://www.lifecareplanningcertification.com/get-certified/ webpage accessed January 7, 2022.

41. Unlike Plaintiff's certifications, it appears that FIG does not require a candidate to pass any certification exam to receive its LCP-C credential beyond the submission of a "redacted Life Care Plan" that is graded by FIG. *See* Exhibit 7, https://www.lifecareplanningcertification.com/lcp-c_criteria/ webpage accessed September 27, 2023.

42. The examination required for Plaintiff's CERTIFIED LIFE CARE PLANNER™ / CLCP™ certification is critical to objectively assess the knowledge and skills that are necessary for the processing, documentation, and writing of a valid life care plan for a person with a disability.

43. Although FIG does not bother to administer an examination, it has sought to copy the other aspects of Plaintiff's certification requirements in an attempt to give its certification a veneer of legitimacy. For example, FIG requires a 120-hour life care planning certification class- exactly the same number of hours required by Plaintiff.

44. FIG's slapdash certification process is directed to the same market of life care planning professionals as Plaintiff's CLCP™ certification and misleadingly suggests that its LCP-C certification is equivalent to Plaintiff's CLCP™ certification, thereby injuring the value, credibility, and goodwill associated with Plaintiff's CLCP™ mark.

45. At about the same time it introduced its LCP-C certification, FIG also started another new certification known as "MEDICARE SET-ASIDE", with the initialism "MSA-C". This is an attempt by FIG to compete with Plaintiff's longstanding and well-known MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ (MSCC™) certification. Plaintiff's MEDICARE SET-ASIDE CERTIFIED CONSULTANT™

(MSCC™) certification was established in 2004 to certify professionals who work within the workers' compensation benefit system as either a health care professional, legal representative, or as an insurance claims adjuster, trained in Medicare set-aside trust arrangements.

46. FIG's MSA-C certification targets and is likely to cause confusion with Plaintiff's MSCC™ certification among individuals seeking to become a certified consultant, skilled in developing Medicare set-aside calculations.

47. FIG's advertisement and published statements about its new certifications have sowed confusion and uncertainty among members of the life care planning community about the status of Plaintiff's certifications.

48. Plaintiff has received inquiries from accredited CLCP™ professionals and potential CLCP™ candidates as to whether FIG's new LCP-C credential was associated with or endorsed by Plaintiff.

49. FIG has made false advertisements relating to its certification classes. For example, an advertisement by FIG in the Winter 2023 issue of the Journal of Nurse Life Care Planning (Volume XXIII Issue 1, page 25) promotes FIG's certification classes as being "Pre-approved for certification" for Plaintiff's CLCP™ and MSCC™ certifications. A copy of the advertisement, with cover page and table of contents of the publication, is attached hereto as Exhibit 8. The advertisement is a blatantly false statement made by FIG in a publication targeted to members of the life care planning community. FIG advertised its classes as being approved by Plaintiff more than a year after FIG had lost its approval to provide training classes for Plaintiff's certifications.

50.     As a proximate result of Defendants' individual and collective outrageous and tortious actions, Plaintiff has been injured and will continue to accrue pecuniary damages.

51.     Defendants' tortious actions have undermined and tarnished Plaintiff's professional reputation and the value of its well-established certification marks. Moreover, Defendants' tortious actions have harmed all life care planning professionals who have worked hard to earn the CLCP$^{TM}$ certification.

<u>**COUNT ONE**</u>
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**IN VIOLATION OF 15 U.S.C. § 1125**
**(Against All Defendants)**

52.     Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-51 above as if fully set forth herein.

53.     Defendant FIG has committed unfair competition and infringement of Plaintiff's Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) by its marketing, promoting and using "LIFE CARE PLANNING–CERTIFIED" and the initialism "LCP-C" which respectively are likely to cause confusion with Plaintiff's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks among consumers, including life care planning professionals and those seeking the services of life care planners.

54.     FIG's use in commerce of "LIFE CARE PLANNING–CERTIFIED" and "LCP-C" is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of FIG with Plaintiff, or as to the origin, sponsorship, or approval

of FIG's services or commercial activities by Plaintiff in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

55.     As described above, Plaintiff owns the common law certification marks, CERTIFIED LIFE CARE PLANNER™ and CLCP™, which have been continuously used in interstate commerce since at least as early as 1996 in connection with the certification of professionals providing life care planning services throughout the United States.

56.     FIG is using "LIFE CARE PLANNING–CERTIFIED" and "LCP-C" in connection with the certification of professionals providing life care planning services.

57.     Plaintiff's CERTIFIED LIFE CARE PLANNER™ and CLCP™ have been in use prior to FIG's use of LIFE CARE PLANNING–CERTIFIED and LCP-C.  FIG and Giles were aware of Plaintiff's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks at the time FIG began using LIFE CARE PLANNING–CERTIFIED and LCP-C.

58.     FIG's use of LIFE CARE PLANNING–CERTIFIED and LCP-C infringes Plaintiff's rights in its CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks.

59.     FIG's LCP-C differs from Plaintiff's CLCP™ mark merely by moving the "C" from the beginning of the mark to the end and inserting a hyphen between "P" and "C".  Members of the life care planning community are likely to be confused by FIG's new LCP-C credential that is virtually identical to Plaintiff's CLCP™ mark in appearance, sound, connotation, and commercial impression.  FIG's superficial rearrangement of the letter "C" is a brazen attempt to unjustly capitalize on the years of goodwill associated with Plaintiff's longstanding CLCP™ mark.

60.     FIG's promotion of its new LCP-C "credential" is designed to sow confusion in at least the following ways: through FIG's use of the similar initialism LCP-C; its suggestion that its new "credential" is necessary to be a "QUALIFIED" life care planner; and FIG's marketing, which references and suggests equivalence to Plaintiff's well-established and widely accepted CLCP™ credential.

61.     In addition, FIG has committed unfair competition and infringement of Plaintiff's Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) by its marketing, promoting and using "MEDICARE SET-ASIDE CERTIFICATION" and "MSA-C" which respectively are likely to cause confusion with Plaintiff's MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ and MSCC™ marks among consumers, including professionals providing consulting services relating to Medicare Set-aside arrangements.

62.     FIG's use in commerce of "MEDICARE SET-ASIDE CERTIFICATION" and "MSA-C" is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of FIG with Plaintiff, or as to the origin, sponsorship, or approval of FIG's services or commercial activities by Plaintiff in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

63.     Plaintiff owns the common law certification marks MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ and MSCC™, which have been continuously used in interstate commerce since at least 2004 in connection with the certification of individuals providing consulting services relating to Medicare set-aside trust arrangements.

64.     FIG is using MEDICARE SET-ASIDE CERTIFICATION and MSA-C in connection with the certification of individuals providing consulting services relating to Medicare set-aside trust arrangements.

65.     FIG's MSA-C differs from Plaintiff's MSCC<sup>TM</sup> mark merely by the substitution of the letter "A" for the "C" in Plaintiff's MSCC<sup>TM</sup> mark and the insertion of a hyphen between "A" and "C". FIG's MSA-C is likely to cause confusion with Plaintiff's long established MSCC<sup>TM</sup> mark.

66.     FIG's use of MEDICARE SET-ASIDE CERTIFICATION and MSA-C infringes Plaintiff's rights in its MEDICARE SET-ASIDE CERTIFIED CONSULTANT<sup>TM</sup> and MSCC<sup>TM</sup> marks.

67.     Plaintiff's Marks are distinctive and have acquired secondary meaning.

68.     FIG advertised, marketed, and promoted its newly created "credentials" in interstate commerce to the public on at least the following websites: https://www.lifecareplanningcertification.com and/or https://www.figeducation.com.

69.     At all relevant times, Defendant Giles has been the top corporate officer and decision maker for Defendant FIG. All acts of infringement and unfair competition by FIG stated herein have been done at the direction of and/or as a result of action taken by Giles. Giles was personally aware of Plaintiff's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks when Giles directed FIG to begin use of LIFE CARE PLANNING– CERTIFIED and LCP-C.

70.     Giles has committed unfair competition and infringement of Plaintiff's Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

71.    Giles and FIG are jointly and severally liable to Plaintiff for unfair competition and infringement of Plaintiff's Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

72.    Defendants' unfair competition and trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A) has been willful and deliberate.

73.    Defendants' infringement and unfair competition has caused and is causing immediate and irreparable harm and damages to Plaintiff.  Unless enjoined by this Court, Defendants will continue to cause immediate and irreparable damage to Plaintiff.

74.    Plaintiff is likely to be injured by Defendants' infringement and unfair competition.  Potential consumers are likely to be confused and believe that there is an affiliation, connection, or association between Plaintiff and FIG or that Plaintiff has sponsored or approved FIG's services or commercial activities.

75.    As a proximate result of the confusion caused by Defendants' tortious behavior, Plaintiff has been damaged and will continue to accrue damages in the form of pecuniary loss, reputational damage, and loss of goodwill and standing in the life care planning community and marketplace.


<u>COUNT TWO</u>
**FALSE ADVERTISING IN VIOLATION**
**OF THE LANHAM ACT, 15 U.S.C. § 1125(A)(1)(B)**
**(Against All Defendants)**

76.    Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-75 above as if fully set forth herein.

77.     FIG has committed false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  FIG has made false or misleading descriptions of fact, or false or misleading representations of facts, which in commercial advertising and/or promotion, misrepresents the nature, characteristics, and/or qualities of its services and/or commercial activities and the services and/or commercial activities of Plaintiff.

78.     For example, FIG published in interstate commerce false statements in a PDF advertisement at the following internet domain address: https://www.lifecareplanningcertification.com/wp-content/uploads/2021/10/LCP-C-Certification-Guidelines-10-28-21.pdf.  A true and correct copy of the foregoing published document is attached hereto as Exhibit 9.

79.     On page 12 of the PDF advertisement, FIG falsely states that "FIG is the only educational provider and certification which recognizes all backgrounds in the Life Care Planning industry."  This statement is false and misleading because Plaintiff also recognizes all backgrounds in the life care planning industry and has done so since CLCP certifications were awarded in 1996.

80.     Furthermore, on page 12 of the PDF advertisement, FIG poses the following question: "How is FIG's certification different from other programs – why choose LCP-C?"  In response to this question, on page 13, FIG falsely and misleadingly states: "FIG's LCP-C certification is the only certification that recognizes the fusion of all perspectives in Life Care Planning."  This statement is false and misleading because it suggests that FIG's competitors, such as Plaintiff, do not offer comprehensive certification in life care planning from all perspectives.  In fact, Plaintiff has been providing comprehensive

certification in life care planning from all perspectives for over a quarter of a century.  This is a false and misleading statement by FIG that misrepresents the nature, characteristics, and/or qualities of Plaintiff's services and/or commercial activities by suggesting that Plaintiff does not offer comprehensive certification in life care planning from all perspectives.

81.     Moreover, FIG's advertisement repeatedly references by name Plaintiff's CLCP$^{TM}$ certification as a point of comparison.

82.     In addition, FIG's advertisement in the Journal of Nurse Life Care Planning (Exhibit 8) falsely states that FIG's certification classes are "Pre-approved for certification" for Plaintiff's CLCP$^{TM}$ and MSCC$^{TM}$ certifications.  At the time this advertisement was published, FIG had not been approved by Plaintiff for more than a year.  This is a false and misleading statement that misrepresents the nature, characteristics and quality of FIG's services and commercial activities by asserting that FIG's certification classes were approved by Plaintiff when in fact they were not.  Similar false and misleading advertisements by FIG have appeared in other issues of the Journal of Nurse Life Care Planning.

83.     These are examples of the materially false and misleading statements that FIG published in its advertisements in interstate commerce that were intentionally designed to deceive those in the field of life care planning or those wishing to enter the field of life care planning.  Indeed, Plaintiff has received a number of communications from members of the life care planning community who were misled and confused by FIG's advertisements.

84.     All acts of false advertising by FIG stated herein have been done at the direction of and/or as a result of action taken by Giles, who at all relevant times has been the top corporate officer and decision maker of FIG. Upon information and belief, Giles personally authorized and directed the publication of the false statements knowing that they were false.

85.     Defendants Giles and FIG are jointly and severally liable to Plaintiff for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

86.     Plaintiff has been and likely will continue to be injured as a proximate result of Defendants' false advertising, either by direct diversion of sales and/or by a lessening of goodwill associated with Plaintiff and Plaintiff's Marks.

**COUNT THREE**
**LIBEL AND SLANDER**
**(Against All Defendants)**

87.     Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-86 above as if fully set forth herein.

88.     Defendants have committed libel and slander in violation of North Carolina common law.

89.     Giles has committed slander *per se* by making verbal statements to rehabilitation professionals asserting that Plaintiff would not allow FIG to train nurses to receive the CLCP™ credential. Such statements are false and impeach the business and professional reputation of Plaintiff. A substantial number of life care planning professionals who have received Plaintiff's CLCP™ certification are registered nurses.

Indeed, Plaintiff has and will continue to encourage and support nurses trained in life care planning to pursue its CLCP<sup>TM</sup> credential.

90. Giles' slanderous statements were made as president of FIG and to benefit FIG by attempting to discourage individuals from applying for Plaintiff's certification in the hope that they would apply for FIG's certification instead.

91. Defendants Giles and FIG are jointly and severally liable to Plaintiff for the slanderous statements.

92. Giles committed libel *per se* in a written post that she published on November 10, 2021 to the IALCP's listserv, in which she suggested that Plaintiff had given FIG an ultimatum to "alienate and discriminate against nurses" in order to maintain its approval by Plaintiff. This outrageous and malicious false statement impeaches and injures the business and professional reputation of Plaintiff. IALCP has more than 500 members and is the life care planning section of the International Association of Rehabilitation Professionals ("IARP"). The IARP is a professional association to which many of Plaintiff's CLCP<sup>TM</sup> certified professionals belong. The allegation that Plaintiff ordered FIG to "alienate and discriminate against nurses" appearing on this online forum frequented by the life care planning community is extremely injurious to Plaintiff's reputation.

93. Moreover, in her post, Giles encouraged "anyone to contact FIG directly to discuss the facts." Upon information and belief, the IALCP members who contacted Giles directly to discuss "the facts," were provided with a more explicit false narrative that Plaintiff was "discriminating" against nurses who sought to receive the CLCP<sup>TM</sup> credential.

94. Giles' statements were made with actual malice because her unambiguous intent was to falsely incite anger against and tarnish the reputations of Plaintiff among nurses and the members of the IALCP's listserv (many of whom are nurses, who work in the life care planning profession).

95. Indeed, a number of written statements published by Giles and FIG relating to FIG's new LCP-C "credential" were designed to falsely insinuate and mislead life care planning professionals to believe that ICHCC was "discriminating" against nurses who sought Plaintiff's CLCP™ certification.

96. For example, when read in light of Giles' false accusations of Plaintiff "discriminating" against nurses, Giles' malicious intent becomes clear through repeated, wide dissemination of the following misleading and suggestive statement originally published on FIG's website:

> At FIG, we embrace all backgrounds in the medical, healthcare, and rehabilitation fields wanting to specialize in Life Care Planning…. So FIG has decided to develop a certification which is open to all qualified medical, healthcare, and rehabilitation professionals who are licensed or certified in their primary practice and have successfully completed a certification class in Life Care Planning.

97. These statements are false and designed with actual malice to undermine and tarnish the professional and business reputation of Plaintiff.

98. The false statements published by Giles and/or FIG constitute libel *per se* as they prejudice Plaintiff's professional reputation and business.

99.     Giles' libelous statements were made as president of FIG and to benefit FIG by attempting to discourage individuals from applying for Plaintiff's certification in the hope that they would apply for FIG's certification instead.

100.    Defendants Giles and FIG are jointly and severally liable to Plaintiff for the libelous statements.

101.    Defendants' libelous statements were made with actual malice and proximately caused Plaintiff to suffer damages in the form of pecuniary loss, reputational damage, and loss of standing.

102.    Defendants' slanderous and libelous statements tarnish the goodwill, value, and professional reputation associated with the CLCP$^{TM}$ certification that Plaintiff has worked hard to develop over the past twenty-seven years.

**COUNT FOUR**
**TORTIOUS INTERFERENCE**
**WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against All Defendants)**

103.    Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-102 above as if fully set forth herein.

104.    Defendants have committed tortious interference with prospective business advantage in violation of North Carolina common law.

105.    Defendants, without justification, have induced third parties to refrain from entering into a contract with Plaintiff which would have ensued but for Defendants' interference.

106.    Defendants, without justification, have induced individuals to refrain from applying for Plaintiff's certifications.

107.    Defendants jointly and severally damaged Plaintiff by tortiously interfering with the Plaintiffs' prospective economic advantage in the life care planning community and marketplace.

108.    Plaintiff has invested many years, working hard to develop its professional reputation, expertise, and ongoing business relationships with members of the life care planning community.

109.    As described above, Plaintiff's certifications are part of Plaintiff's ongoing business concern, which constitute a valid business expectancy with a probability of future economic profit.  Indeed, many members of the life care planning community who have received certification in one area of life care planning from Plaintiff, such as the CLCP$^{TM}$ certification, often seek out additional certifications—such as MSCC$^{TM}$—from Plaintiff as repeat customers.

110.    Defendants are well-aware of this fact, which is why FIG promoted certifications that are confusingly similar to Plaintiff's well-established marks and defamed Plaintiff's professional reputation—causing Plaintiff to lose professional clients and potential repeat business.

111.    Absent the unfair competition and defamation committed by Defendants, there existed a reasonable certainty that Plaintiff would have realized additional repeat business relating to renewals of certifications and additional certifications.

112. Defendants' false statements that Plaintiff discriminates against certain members of the life care planning community has induced members of the life care planning community to refrain from applying for Plaintiff's certifications and instead apply for FIG's certifications. But for Defendants' false statements, those individuals who were induced by Defendants to refrain from applying for Plaintiff's certifications would have applied for Plaintiff's certifications and their business relationship with Plaintiff would have reasonably been expected to continue and grow.

113. Defendants' tortious interference has proximately caused Plaintiff to suffer damages in the form of pecuniary loss, reputational damage, and lost goodwill.

## COUNT FIVE
## VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C.G.S. § 75-1.1 *et seq*.
### (Against All Defendants)

114. Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-112 above as if fully set forth herein.

115. Defendants have engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

116. Defendants' false statements published to members of the life care planning community asserting that FIG was approved by Plaintiff when FIG was not approved and suggesting that Plaintiff demanded discrimination against certain members of the life care planning community, and Defendants' adoption of certification names likely to be

confused with Plaintiff's Marks constitutes unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

117.   Giles engaged in a false whisper campaign among the life care planning community that Plaintiff "discriminating against nurses" as the reason for FIG's suspension as an educational program for Plaintiff's CLCP™ credential.  In doing so, Giles laid the groundwork for and aided and abetted FIG's launch of its newly minted certifications, designed to be confusingly similar to Plaintiff's well-established certification marks.

118.   Defendants promoted and marketed FIG's new certifications by with the misleading and confusing statement that FIG's LCP-C certification was a necessary prerequisite to practice as a "QUALIFIED" professional life care planner: "FIG's Life Care Planning – Certified (LCP-C) credential was designed for the medical, healthcare, and rehabilitation provider wishing to gain the competency learning and comprehensive knowledge which is necessary to practice as a QUALIFIED Life Care Planner." *See* Exhibit 5.

119.   Defendants' false statements to members of the life care planning community asserting that FIG was approved by Plaintiff when FIG was not approved and suggesting that Plaintiff discriminated against certain members of the life care planning community, Defendant's failure to inform individuals enrolled in FIG's training course that FIG's training course was no longer approved by ICHCC, and FIG's adoption of certification names likely to be confused with Plaintiff's Marks constitutes unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or

affecting commerce in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

120. Defendants' actions described herein are immoral, unethical, unscrupulous and substantially injurious to Plaintiff and consumers in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

121. Individuals, who have been misled or confused by Defendants, have taken FIG's training course under the false impression that FIG's course is approved for Plaintiff's certification only to find out after completion of the course and submitting an application to Plaintiff that the FIG course does not satisfy the training requirement for Plaintiff's certification. As a direct and proximate result of Defendants' unfair competition and deceptive trade practices, these individuals have suffered damages in lost time and money.

122. Plaintiff has suffered pecuniary damages, along with substantial injury to its professional reputation, goodwill, and business prospects as a direct and proximate result of Defendant's unfair competition and deceptive acts and practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

123. Plaintiff has been injured by Defendants' unfair competition and deceptive acts and practices, and is entitled to treble the amount of damages fixed by verdict pursuant to N.C.G.S. §75-16.

124. Defendants willfully engaged in unfair competition and deceptive acts and practices in violation of N.C.G.S. §75-1.1, and Plaintiff is entitled to its reasonable attorney fees pursuant to N.C.G.S. §75-16.1.

## COUNT SIX
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## IN VIOLATION OF NORTH CAROLINA COMMON LAW
### (Against All Defendants)

125.    Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-124 above as is if fully set forth herein.

126.    Defendants have committed trademark infringement and unfair competition in violation of the common law of North Carolina.

127.    FIG's recently adopted LIFE CARE PLANNING-CERTIFIED, LCP-C, MEDICARE SET-ASIDE CERTIFICATION, and MSA-C marks are apparent imitations of Plaintiff's Marks that are likely to mislead prospective purchasers and the public, and Plaintiff has suffered damages as a result.

128.    Plaintiff and FIG are business competitors in that both offer certifications to individuals providing life care planning services and Medicare set-aside services.


## COUNT SEVEN
## ORDER TO U.S. PATENT AND TRADEMARK OFFICE TO REFUSE
## REGISTRATION OF APPLICATION SERIAL NOS. 97748261 AND 97748272
## PURSUANT TO 15 U.S.C. § 1119 AND 28 U.S.C. § 2201
### (Against All Defendants)

129.   Plaintiff incorporates by reference each of the allegations set forth in the foregoing paragraphs 1-128 above as if fully set forth herein.

130. FIG is the owner of U.S. Application Serial No. 97748261 for LCP-C (plus design) and U.S. Application Serial No. 97748272 for MSA-C (plus design), which are pending in the U.S. Patent and Trademark Office.

131. Pursuant to 15 U.S.C. § 1119 and/or 28 U.S.C. § 2201, this Court may determine the rights of the parties in relation to this action, including the right to registration of a mark at the U.S. Patent and Trademark Office.

132. Plaintiff asks the Court for a declaration that FIG's U.S. Application Serial No. 97748261 for LCP-C (plus design) and U.S. Application Serial No. 97748272 for MSA-C (plus design) do not meet the requirements for registration as set forth in 15 U.S.C. §§ 1052, 1054.

133. Plaintiff petitions the Court to order the U.S. Patent and Trademark Office to refuse registration of FIG's U.S. Application Serial No. 97748261 for LCP-C (plus design) and U.S. Application Serial No. 97748272 for MSA-C (plus design) on the grounds that they do not meet the requirements for registration as set forth in 15 U.S.C. §§ 1052, 1054.

134. The mark of FIG's Application Serial No. 97748261 so resembles a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used by FIG, to cause confusion, or to cause mistake, or to deceive. The mark of FIG's Application Serial No. 97748261 so resembles Plaintiff's CLCP™ mark, which was previously used in the United States and not abandoned, as to be likely, when used by FIG, to cause confusion, or to cause mistake, or to deceive. Accordingly, registration of Application Serial No. 97748261 should be refused pursuant to 15 U.S.C. §§ 1052(d), 1054.

135.  The mark of FIG's Application Serial No. 97748272 so resembles a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used by FIG, to cause confusion, or to cause mistake, or to deceive.  The mark of FIG's Application Serial No. 97748272 so resembles Plaintiff's MSCC™ mark, which was previously used in the United States and not abandoned, as to be likely, when used by FIG, to cause confusion, or to cause mistake, or to deceive.  Accordingly, registration of Application Serial No. 97748272 should be refused pursuant to 15 U.S.C. §§ 1052(d), 1054.

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiffs and against Defendants and grant Plaintiff all of the following relief:

A.      That the Court enter judgment for Plaintiff against Defendants for all claims contained in all counts of the complaint recited above;

B.      Preliminarily and permanently enjoin Defendants, its officers, agents, servants, employees, and those in active concert or participation with any of them, from infringing Plaintiff's Marks;

C.      Preliminarily and permanently enjoin Defendants, its officers, agents, servants, employees, and those in active concert or participation with any of them, from using LIFE CARE PLANNING-CERTIFIED, LCP-C, MEDICARE SET-ASIDE CERTIFICATION, and/or MSA-C;

D.      That the Court, pursuant to 15 U.S.C. § 1117, award Plaintiff all of Defendants' profits, all damages sustained by Plaintiff, and the costs of the action, to be determined at trial;

E.      That the Court declare this to be an exceptional case, and award Plaintiff reasonable attorney fees pursuant to 15 U.S.C. § 1117;

F.      That the Court award Plaintiff treble damages pursuant to N.C.G.S. §75-16;

G.      That the Court award Plaintiff reasonable attorney fees pursuant to N.C.G.S. §75-16.1;

H.      That a trial by jury be had on all issues so triable; and

I.      That such other and further relief be granted to Plaintiff as the Court may deem just and proper, in law or equity.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted, this the 31st day of October, 2023.

/s/ Stephen S. Ashley, Jr.
Stephen S. Ashley, Jr.
N.C. State Bar No. 27,649
ASHLEY LAW FIRM P.C.
10700 Sikes Pl., Ste. 230
Charlotte, NC 28277
Telephone:   (704) 847-1300
Facsimile:    (704) 847-1301
E-mail:        sa@ashleypatentlaw.com

*Attorney for Plaintiff*